J-S70010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JASON PETERSON, | |
| Appellant | No. 1719 EDA 2015 |

Appeal from the Judgment of Sentence May 20, 2015
in the Court of Common Pleas of Bucks County
Criminal Division at No.: CP-09-CR-0000677-2015

BEFORE: DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 11, 2015**

Appellant, Jason Peterson, appeals from the judgment of sentence entered on May 20, 2015, following his conviction of possession with intent to deliver a controlled substance (PWID), possession of drug paraphernalia, and criminal use of a communication facility.[1] On appeal, Appellant challenges the denial of his motion to suppress. For the reasons discussed below, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and (32), and 18 Pa.C.S.A. § 7512, respectively.

We take the underlying facts and procedural history in this matter from the trial court's opinion of August 4, 2015, and our independent review of the certified record.

> On November 11, 2014, Bensalem Township Police Officer Gregory Smith was advised by a confidential informant ("C.I.") that the C.I. could purchase heroin and cocaine from an individual named Jay. The C.I., described Jay as a large black male with a "Muslim style" beard. The C.I. then placed two phone calls to Jay in Officer Smith's presence. Officer Smith could only hear the C.I.'s end of the conversation, and he could not hear anything said by the individual to whom the C.I. was speaking. During the phone call, the C.I. requested to purchase a quantity of heroin, and the parties agreed to meet at a Wawa convenience store located on Lincoln Highway in Bensalem Township, Bucks County, Pennsylvania to carry out the drug sale. The C.I. additionally gave Officer Smith Jay's telephone number and advised Officer Smith that Jay would be driving a blue Honda minivan.
>
> Approximately forty-five minutes to one hour after the C.I. made the first phone call to Jay, Officer Smith observed a blue Honda minivan pull into the parking lot of the Wawa. At that time, the C.I. advised Officer Smith that the passenger of the minivan was the individual from whom the C.I. had purchased heroin and crack cocaine in the past. Officer Smith then pulled into the Wawa parking lot so that the C.I. could get a closer look at the passenger of the minivan. Once again, the C.I. confirmed that the passenger of the minivan was Jay.
>
> At this time, Officer Smith notified other members of the surveillance team that the passenger of the minivan was the target of their investigation. In response, law enforcement officials approached the passenger of the minivan inside of the Wawa, detained him, and led him out of the store. The passenger of the minivan was then determined to be Appellant, Jason Peterson. Officers conducted a search of Appellant and found two cell phones, $282 in cash, a bag of what appeared to be crack cocaine, and two bundles of what appeared to be heroin

in his possession.[2]  Appellant was then taken into custody and brought back to police headquarters.

While at police headquarters, police read Appellant *Miranda*[3] warnings and interviewed him using a narcotics questionnaire commonly used by the Bristol Township Police Department in drug related arrests.  During that interview, Appellant provided police with his cell phone number, which matched the number that was called by the C.I. in arranging the

_____

[2] The record is inconsistent as to whether Appellant was stopped and searched as part of an investigatory detention and then arrested based both upon the C.I.'s information and the drugs found on his person, or whether the police immediately arrested him based solely on the C.I.'s information and the search was incident to the arrest.  At the suppression hearing, Officer Smith testified that the other members of the surveillance team "moved in and detained [Appellant]."  (N.T. Suppression Hearing, 5/20/15, at 10).  Bensalem Township Police Officer Joseph Gansky testified that he "approached [Appellant] and detained him and took him out of the store." (*Id.* at 17).  He then searched Appellant, transported him to the police station, and read him his rights.  (*See id.* at 18).  The parties appear to use the terms and variants of detain, custody, and arrest interchangeably; and often seem to contradict themselves as to whether the police detained and searched Appellant or arrested and searched Appellant.  (*See id.* at 5) (defense counsel states she is challenging arrest and search of Appellant without probable cause), (*see id.* at 33) (defense counsel argues that Appellant was "seized and searched" without probable cause), (*see id.* at 38) (trial court found that Officer Gansky effectuated arrest of Appellant immediately after Officer Smith notified him of C.I.'s identification); (*see also* Trial Court Opinion 8/04/15, at 1) (noting that Appellant was challenging search as incident to unlawful arrest), (*see id.* at 2) (describing sequence of events as Officer Gansky detaining Appellant, searching him, and then taking him into custody), and (*see id.* at 4-7) (analyzing events as arrest without probable cause and search incident to arrest rather than as investigatory detention and frisk).  In their briefs, Appellant and the Commonwealth both treat the issue as an arrest and a search incident to that arrest.  (*See* Appellant's Brief, at 9-16; Commonwealth's Brief, at 8-15).  Given the lack of clarity in the underlying record, we will not dispute the parties' characterization of the events.  In any event, the various interpretations would not change our disposition.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

drug deal. Appellant further stated that at the time of his arrest, he possessed two bundles of heroin that he planned to sell for $200.

After being presented with this evidence during the suppression hearing, the [trial c]ourt concluded that police had probable cause to arrest and search Appellant. As a result, the [trial c]ourt denied Appellant's motion to suppress the heroin and cocaine found in his possession.

Following the conclusion of the suppression hearing, counsel entered a stipulation to the authenticity and admissibility of the laboratory report prepared by the Bucks County Crime Laboratory. The report revealed that the substances found in Appellant's possession tested positive for 0.63 grams of heroin and 0.03 grams of cocaine. The [c]ourt then incorporated the testimony and exhibits presented during the suppression hearing into the record for consideration.

The [c]ourt ultimately found Appellant guilty of all three charged offenses. Appellant was then sentenced to serve two-and-a-half to five years' incarceration in a state correctional institution on count one—possession with intent to deliver a controlled substance. No further penalty was imposed on counts two or three. . . .

(Trial Court Opinion, 8/04/15, at 1-4) (record citations omitted).

On June 10, 2015, Appellant filed a timely notice of appeal. On June 19, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed his timely Rule 1925(b) statement on July 1, 2015. On August 4, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following question for our review:

Did not the trial court err in denying the motion to suppress the evidence where [Appellant] was arrested on the say so of a C.I. [of] whom there was no conformation (sic) of his

reliability, veracity or basis of knowledge and where the police did not observe any illicit behavior by Appellant?

(Appellant's Brief, at 5) (unnecessary capitalization omitted).

On appeal, Appellant challenges the denial of his motion to suppress. (*See id.* at 9-15). When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by Appellant. *See id.* If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the court. *See id.*

On appeal, Appellant appears to concede that the police had reasonable cause to conduct an investigatory detention, only challenging whether they had probable cause to arrest. (*See* Appellant's Brief, at 9). Specifically, Appellant argues that:

> The police lacked probable cause to arrest Appellant based upon the say so of [a confidential] informant who claimed that Appellant was a drug dealer from whom he could buy drugs. . . . No suspicious activity was observed by the police. The [confidential] informant's veracity, reliability and basis of knowledge were unknown and untested.

(*Id.* at 8).

Our Supreme Court has stated:

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citations and quotation marks omitted, emphasis in original). The Court also stated that:

[p]robable cause is a practical, nontechnical conception: it is a fluid concept—turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules. Indeed, the instant case illustrates as clearly as any other the very reason we adopted this approach, namely, the need to be mindful of the notion of probable cause as based on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Commonwealth v. Ruey*, 892 A.2d 802, 815 (Pa. 2006) (citations and quotation marks omitted).

Recognizing these principles, this Court has stated:

Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the *quanta* of evidence necessary to establish probable cause . . . finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision.

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa. Super. 2005), *appeal denied*, 920 A.2d 831 (Pa. 2007). (citations and quotation marks omitted). Lastly, probable cause "exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super. 2005) (citation omitted).

With respect to the use of a confidential informant's information as the basis for probable cause, our Supreme Court has stated:

> . . . a determination of probable cause based upon information received from a confidential informant depends upon the informant's reliability and basis of knowledge viewed in a common sense, non-technical manner. Thus, an informant's tip may constitute probable cause where police independently corroborate the tip, **or** where the informant has provided accurate information of criminal activity in the past, **or** where the informant himself participated in the criminal activity.

*Commonwealth v. Clark*, 28 A.3d 1284, 1288 (Pa. 2011) (citations omitted) (emphases in original).

Here, the trial court cited the following facts in concluding that there was probable cause to arrest Appellant.

> The arresting officers in this case had an abundant basis upon which to conclude that the purpose of Appellant's presence at the Wawa was to conduct a drug sale, and therefore[,] that there was probable cause to place Appellant under arrest. The facts and circumstances in support of this conclusion include: (1) the C.I. advised Officer Smith that he had purchased heroin and cocaine from Appellant in the past; (2) Officer Smith heard the C.I. order a quantity of heroin from Appellant over the telephone; (3) the C.I. provided an accurate description of Appellant as a large black male with a full "Muslim style" beard, which was later confirmed by police observation at the Wawa; (4) the C.I. told Officer Smith that Appellant would be driving a

blue (or dark colored) Honda minivan, which was subsequently confirmed by police observation at the Wawa; (5) Appellant appeared approximately within the prearranged time; (6) Appellant appeared at the prearranged location; (7) the C.I. confirmed to Officer Smith that Appellant was the individual with whom he arranged to meet at the Wawa to purchase drugs. As a result, Officer Smith could effectively evaluate the C.I.'s basis of knowledge and reliability in making this tip to law enforcement.

Armed with this information, a reasonable person in Officer Smith's position could reasonably conclude that Appellant arrived at the Wawa for the purpose of committing a crime. . . .

(Trial Ct. Op., at 6-7). We agree with the trial court that, when one considers these facts in combination, they are sufficient to justify an arrest. *See Commonwealth v. Verdekal*, 506 A.2d 415, 420 (Pa. Super. 1986) ("Facts insufficient to justify an arrest if considered separately may in combination supply probable cause.") (citation omitted). Moreover, we note that the C.I. was known to police and was actively participating in criminal activity. (*See* N.T. Suppression Hearing, 5/20/15, at 8, 13-14); *see also Clark*, *supra* at 1288. He also arranged for the drug deal in the presence of the police officer (*see* N.T. Suppression Hearing, at 8), and remained with the officer during the incident, identifying Appellant, his drug dealer, for the police (*see id.* at 10). *See Commonwealth v. Griffin*, 954 A.2d 648, 651-52 (Pa. Super. 2008), *appeal denied*, 967 A.2d 958 (Pa. 2009) (noting that "[t]he more intimate the basis of knowledge [of an informant's tip], the more likely the information is to be trustworthy.") (citation omitted). This information, all of which the record at the suppression hearing supports, is

sufficient to establish the requisite probable cause to arrest Appellant.[4]  *See*

*Clark*, *supra* at 1288; *Ruey*, *supra* at 815-16.  The trial court properly

denied the motion to suppress.  Appellant's claim lacks merit.

Accordingly, for the reasons discussed above, we affirm the judgment

of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015

---

[4] We are not persuaded by Appellant's reliance on the Pennsylvania Supreme Court's plurality decision in *In the interest of O.A.*, 717 A.2d 490 (Pa. 1998).  (*See* Appellant's Brief, at 10, 13-14).  Firstly, a plurality decision does not constitute binding authority. *See Commonwealth v. Henkel*, 90 A.3d 16, 32 (Pa. Super. 2014), *appeal denied*, 101 A.3d 785 (Pa. 2014) (citations omitted).  Secondly, *O.A.* is factually inapposite because the C.I. in that case, unlike in the instant matter, had not purchased drugs from the defendant but rather had seen him at some unknown point of time in possession of drugs. *See O.A.*, *supra* at 496-97.