**[100 MAP 2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | Appeal from the Order of the Commonwealth Court dated October 5, 2016, at No. 517 M.D. 2016 |
| Appellants | : | |
| v. | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| Appellee | : | |

## OPINION IN SUPPORT OF AFFIRMANCE

**JUSTICE BAER**                                    **DECIDED: October 25, 2016**

Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala ("Appellants") appeal from the Commonwealth Court's order dated October 5, 2016, which granted summary relief in favor of Secretary Pedro A. Cortés ("Secretary") and dismissed Appellants' petition for review. Appellants' petition for review challenged the legality of the November 2016 general election ballot question, as framed by the Secretary, which seeks to amend the mandatory judicial retirement age set forth in Article V, Section 16(b) of the Pennsylvania Constitution.[1] For the reasons that follow, we would affirm the Commonwealth Court.

---

[1]    Article V, Section 16(b) currently provides, in relevant part, that "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years." PA. CONST. art. V, § 16(b).

The record establishes that on July 21, 2016, Appellants filed a complaint in the Commonwealth Court challenging the Secretary's phrasing of the ballot question. Appellants sought an order declaring the ballot question unlawful, enjoining the Secretary from placing the question on the November 2016 ballot, and directing the Secretary to present the question to the electorate in a manner that advises voters that the compulsory judicial retirement age would be raised from 70 to 75. Later that day, Appellants filed in this Court an emergency application requesting that we assume plenary jurisdiction over the action pursuant to 42 Pa.C.S. § 726. See Appellants' Emergency Application for Extraordinary Relief at 11 (asserting that "[i]t is virtually certain that any order issued by the Commonwealth Court in this matter would be appealed to this Court. Consequently, [Appellants] respectfully submit that this Court should assume immediate plenary jurisdiction over the matter in order to resolve it in advance of the November 8, 2016 general election."). This Court granted Appellants' emergency application on July 27, 2016, and an expedited briefing schedule was established.

As there were no factual disputes, the parties filed applications for summary relief. On September 2, 2016, this Court entered a unanimous *per curiam* order, stating that, because the Court was evenly divided as to which parties were entitled to summary relief, we lacked authority to grant the requested relief and, thus, maintained "the *status quo* of the matter prior to the filing of the lawsuit." Sprague v. Cortés, No. 75 MAP 2016, *per curiam* order dated Sep. 2, 2016 (citing Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in an original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter)).

This author filed an opinion in support of granting summary relief to the Secretary, which was joined by Justices Donohue and Mundy. Additionally, an opinion in support of granting summary relief to Appellants was filed by Justice Todd, and joined by Justice Dougherty and, in part, by Justice Wecht. Justice Wecht also filed a separate opinion in support of granting summary relief to Appellants. The opinions themselves had no precedential effect, but were issued to explain the various views regarding whether the ballot question was unlawful. The equal division among the Court on the question of whether Appellants were entitled to declaratory and injunctive relief was the basis for the Court's ultimate judgment, maintaining the *status quo*, which judgment was rendered unanimously by the concurrence of all Justices.

Appellants thereafter filed an application for reconsideration, requesting that we remand the matter to the Commonwealth Court for that court to examine the exact question that this Court already reviewed. On September 16, 2016, this Court entered a *per curiam* order denying Appellants relief on the ground that they did not present a compelling reason for reargument but, rather, sought a new avenue of relief. We emphasized that the grant of Appellants' request for extraordinary jurisdiction pursuant to Section 726 of the Judicial Code removed the case from the lower court so that this Court could impose a final order in the matter. See 42 Pa.C.S. § 726 (providing that "the Supreme Court may, on its own motion or upon the petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done"). This Court's order denying reconsideration further distinguished the deadlock on the Court, which related to whether Appellants had a clear right to the requested relief, from the Court's unanimous judgment in the matter, which maintained

3

the *status quo* prior to the filing of the litigation. We concluded that a remand for the Commonwealth Court to consider the case anew would be unprecedented, unsupported by legal authority, and outside the scope of Pa.R.A.P. 2543. Justice Todd filed a dissenting opinion to the *per curiam* order, which was joined by Justice Wecht, in which she opined that this Court should remand the matter to the Commonwealth Court for it to address the legality of the ballot question's phrasing.

On September 19, 2016, Appellants filed in the Commonwealth Court a second petition for review in the nature of a complaint for declaratory and injunctive relief against the Secretary, raising the identical challenge and seeking the identical relief as they did in the original case before this Court. The Secretary sought dismissal of Appellants' petition, contending that: (1) the action was barred by the doctrines of *res judicata*, laches, and "law of the case;" (2) relitigation of this Court's September 2, 2016 order would violate Article V, Section 2 of the Pennsylvania Constitution; (3) the ballot question is fair, accurate, and clearly apprises voters of the question to be voted on; (4) the Secretary and Attorney General are entitled to act free of interference under the political question doctrine; and (5) Appellants are not entitled to injunctive relief. Both parties again filed applications for summary relief.

On October 5, 2016, in a single judge memorandum opinion authored by President Judge Mary Hannah Leavitt, the Commonwealth Court granted the Secretary's application for summary relief, denied Appellants' application for summary relief, and dismissed Appellants' petition for review, finding that the action was barred by the doctrine of *res judicata*. The court did not address the Secretary's additional objections to the Commonwealth Court's reconsideration of the ballot question challenge. The court reasoned that four conditions must exist for *res judicata* to apply: (1) identity of the issues; (2) identity of causes of action; (3) identity of persons and

4

parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. Commonwealth Court Slip Op. at 6 (citing <u>Safeguard Mutual Insurance Company v. Williams</u>, 345 A.2d 664, 668 (Pa. 1975)). The Commonwealth Court found all of these requisites satisfied as the two actions (*i.e.*, the action adjudicated by this Court by order dated September 2, 2016 and the action filed in Commonwealth Court on September 19, 2016) shared identity of issues, causes of action, and parties. Finding that this Court adjudicated the claims raised by the same parties in its September 2, 2016 *per curiam* order, the Commonwealth Court held that the doctrine of *res judicata* precludes that court's reconsideration of the same matter.

The Commonwealth Court rejected the contention that, because this Court was divided regarding the legality of the ballot question, Appellants never received a final adjudication on the merits of their claim, which is necessary for *res judicata* to apply. Relying upon this Court's September 16th order denying reconsideration, the Commonwealth Court stated that "[t]he Supreme Court has held that [Appellants'] issues and claim have been finally adjudicated. This [c]ourt may not revisit that holding." Commonwealth Court Slip Op. at 9.

On October 11, 2016, Appellants filed a notice of appeal in this Court, as well as an emergency application seeking an expedited disposition without further briefing. Ignoring that the Secretary objected to the Commonwealth Court's consideration of Appellants' petition for review for a myriad of discrete reasons not addressed by the Commonwealth Court due to its finding that the case was precluded by the doctrine of *res judicata*, Appellants now request that we reverse the Commonwealth Court's dismissal of the petition based on *res judicata* and direct that court to adjudicate their challenge to the ballot question, regardless of the validity of the Secretary's alternative objections.

Appellants' entire premise on appeal mirrors the position taken by the dissenting Justices in the reconsideration matter, *i.e.*, because this Court was evenly divided as to whether the ballot question suffers from a legal impediment, Appellants never received a final judgment on the merits of their claim, and thus, their current action is not precluded. Citing language from this Court's September 2nd order indicating that we lacked authority to grant the requested relief due to an inability to reach consensus, Appellants submit that we likewise lacked authority to adjudicate the merits of their claim, which is a prerequisite to the application of *res judicata*. They further rely on distinguishable case law suggesting that the legal effect of a deadlock in a jurisdiction's highest appellate court is the same as if no appeal had been taken. From this tenet, Appellants conclude that this Court's September 2nd order maintaining the *status quo* is a nullity, having no legal effect whatsoever. They argue that the facts presented should be viewed as though this Court never granted their request for extraordinary jurisdiction, leaving the matter ripe for adjudication by the Commonwealth Court.

In his answer to Appellants' emergency application, the Secretary joins Appellants' request that this matter be resolved as expeditiously as possible, without further briefing, and attaches his brief filed in Commonwealth Court. He contends that we should affirm summarily the well-reasoned decision below, which held that this Court's unanimous September 2nd *per curiam* order maintaining the *status quo* effectively denied the relief Appellants sought and constitutes a final adjudication on the merits for purposes of *res judicata*, rather than the absence of a decision as Appellants suggest. The Secretary asserts that the legal effect of an evenly divided judicial body in Pennsylvania is that the requested relief is denied, both implicitly and as a matter of law. Accordingly, he submits, the Commonwealth Court may not revisit this Court's determination, to which the parties are bound.

6

In addition to claims alleging preclusion of reconsideration of the ballot question issue based upon the doctrines of laches, "law of the case," and political question, the Secretary further contends that Appellants attempt to have the Commonwealth Court usurp this Court's "supreme judicial power of the Commonwealth" offends the constitutionally established structure of the judiciary as the September 2nd order declined to grant Appellants the very relief they subsequently sought in the Commonwealth Court. See PA. CONST. art. V, § 2(a). He argues that what Appellants essentially seek is for the Commonwealth Court to be this Court's tiebreaker in contravention of the structure of the unified judicial system. Accordingly, he requests that we affirm the order of the Commonwealth Court dismissing Appellants' petition for review.

We agree with the Secretary that the Commonwealth Court was correct in holding that this Court's September 2nd order maintaining the *status quo* is a final order effectively declining Appellants' requested relief and, thus, constitutes a final judgment on the merits for purposes of *res judicata*. As Justice Wecht points out in his Opinion in Support of Reversal, "[i]t is axiomatic that in order for . . . *res judicata* to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment." Opinion in Support of Reversal, Wecht, J., at 3 (quoting County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 678 A.2d 355, 359 (Pa. 1996)). Here, the various opinions attached to this Court's September 2nd unanimous *per curiam* order clearly establish that Appellants actually litigated in this Court the issue of whether the ballot question is legal and whether they are entitled to declaratory and injunctive relief. Because this Court evenly divided as to the legality of the ballot question, the Court's unanimous *per curiam* order determined that Appellants were not entitled to relief and that the *status quo*, prior to the filing of the litigation, must be

7

maintained. Thus, the order constitutes a valid and final judgment, as it disposed of all claims and of all parties. See Pa.R.A.P. 341(b)(1) (defining a final order as an order disposing of all claims and of all parties).

Respectfully, Appellants and the Justices in support of reversal are misguided when they suggest that there was no final judgment on the merits because this Court did not by majority decision definitively answer whether the ballot question, as submitted by the Secretary, was illegal.

While factually distinguishable and not dispositive, we find persuasive the United States Supreme Court's sentiment, observed more than 100 years ago, that:

> [A court's judgment] is not the less expressive of the decision of the court upon the merits of the petitioner's claim in the case because it is rendered upon an equal division of opinion among the judges. The fact of division does not impair the conclusive force of the judgment, though it may prevent the decision from being authority in other cases upon the question involved. The judgment is that of the entire court, and is as binding in every respect as if rendered upon the concurrence of all the judges.

Hartman v. Greenhow, 102 U.S. 672, 675-76 (1880) (citations omitted). Stated succinctly, that the parties to this appeal do not have a definitive answer to the legal inquiry of whether the ballot question is invalid most certainly does not mean that the issue was not litigated and finally disposed of by this Court's September 2nd unanimous *per curiam* order.

The following illustrates the point. When this Court evenly divides on a legal issue presented in an appeal, we enter a final *per curiam* order affirming the lower court's judgment - an action which maintains the *status quo* of the matter prior to the filing of the appeal in this Court. See, e.g., Gov't Employees Ins. Co. v. Ayers, 18 A.3d 1093 (Pa. 2011). Similarly, if the Court accepts extraordinary jurisdiction over a case where no judgment has been entered by a lower tribunal and we deadlock, then we

8

enter a final *per curiam* order that maintains the *status quo* of the matter prior to the filing of the lawsuit, as occurred in this case. See Creamer, supra. In both situations, the moving party failed to convince a majority of the Court to take affirmative action. Because the Court in this circumstance cannot grant relief, relief is denied by operation of law, and the *status quo* is maintained, which in this case results in the constitutional amendment as advertised remaining on the November 8, 2016 general election ballot.

It is indisputable that any opinion attached to these *per curiam* orders has no precedential value; it is equally indisputable that the orders are nonetheless binding, final orders. See Commonwealth v. Bomar, 826 A.2d 831, 843 n.13 (Pa. 2003) ("While the ultimate order of a plurality opinion, *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.") (*quoting Interest of O.A.*, 717 A.2d 490, 496 n. 4 (Pa. 1998) (opinion announcing judgment of the court)); see also Pa.R.A.P. 341(b)(1) (defining a final order as "any order that . . . disposes of all claims and of all parties"). Any purported distinction between the finality of orders entered as a result of a divided decision of this Court in its appellate jurisdiction versus orders entered as a result of a deadlock in an original jurisdiction matter constitutes the proverbial "red herring." In both scenarios, a final judgment is entered maintaining the *status quo* and precluding further litigation among the parties to that action. Significantly, the Commonwealth Court cogently noted that this conclusion derives from the express language set forth in this Court's September 16th order denying reconsideration, which a majority of this Court joined. See Commonwealth Court Slip Op. at 9 ("The Supreme Court has held that [Appellants'] issues and claim have been finally adjudicated. This [c]ourt may not revisit that holding.").

9

Our proposed disposition is not contrary to <u>County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd.</u>, 678 A.2d 355 (Pa. 1996), upon which the Justices in support of reversal rely. <u>County of Berks</u> held that an order of this Court, unaccompanied by an opinion, which denied a party's request for extraordinary relief did not constitute an adjudication on the merits for purposes of *res judicata.* <u>Id.</u> at 359 (stating that "we now hold that where this [C]ourt has issued an order without opinion denying extraordinary relief, that order alone is insufficient to establish that there has been a full and final adjudication of the claims raised"). Conversely, here, this Court issued an order *granting* Appellants' emergency application for extraordinary relief, the parties litigated the issues through briefing, the Court issued multiple opinions on the legal issue presented, and this Court entered a final order which disposed of all the claims in the case and resulted in the denial of relief to Appellants. It cannot be ignored that this Court's grant of extraordinary relief pursuant to 42 Pa.C.S. § 726 assumes jurisdiction over the case so that we may enter a final order. An order denying extraordinary jurisdiction, on the other hand, merely refuses to allow invocation of our jurisdiction to hear the case at that point in the proceeding. Thus, <u>County of Berks</u> is not dispositive for we cannot equate our grant of extraordinary jurisdiction in this case and the extensive litigation that occurred thereafter with a single order denying extraordinary relief.

Further, contrary to the position of the Justices in support of reversal, Appellants are not denied any rights by this proposed disposition. Justice Wecht's assertion that "today's reappearing deadlock denies Appellants their right to a merits decision by the courts of this Commonwealth," Opinion in Support of Reversal, Wecht, J., at 4, completely ignores what occurred in this case. Appellants were given every opportunity to have the Commonwealth Court adjudicate the substance of their legal challenge to

10

the ballot question, but Appellants voluntarily and purposefully waived such opportunity by seeking this Court's extraordinary jurisdiction pursuant to Section 726 of the Judicial Code minutes after their Commonwealth Court action was filed, thereby forfeiting their right to appellate review of an original jurisdiction decision. The result Appellants received, *i.e.,* a final judgment from this Court and no substantive review by the Commonwealth Court, was the direct result of their own tactical litigation plan.

Further, both Appellants and the Justices in support of reversal disregard cavalierly this Court's Article V, Section 2(a)'s supremacy power. Indeed, there simply can be no question that Article V, Section 2(a) vests this Court with the supreme judicial power of the Commonwealth. Appellants provide no authority, as none exists, that would allow them to relitigate their claims in a lower tribunal after this Court had granted the extraordinary relief they sought concerning jurisdiction and then proceeded to enter a final order in the matter.

In her Opinion in Support of Reversal, Justice Todd opines that "[w]ith today's inaction by this Court, it appears that the present parties, and more importantly the public, will go to the polls on November 8 without receiving an answer to that fundamental question [as to whether the ballot language satisfies constitutional standards for clarity]." Opinion in Support of Reversal, Todd, J., at 9. Regardless of the significance of the underlying challenge to the ballot question at issue, this Court cannot create remedies where the law does not so provide.

This Court also should not be influenced by newspaper editorials or polls that are not part of the record before us and are not in any way pertinent to the narrow legal issue presented regarding the preclusive effect of this Court's September 2nd order. See Opinion In Support of Reversal, Wecht, J., at 4-5 (citing a recent poll by Franklin & Marshall College, and various published editorials). This Court should not be

11

concerned with matters of public opinion, but only matters of legal significance to issues that are properly presented by the parties. References to commentary regarding whether the proposed constitutional amendment should, in fact, be passed have no place in appellate court opinions deciding a discrete legal issue. These practices are misguided at best and dangerous at worst.

It is for these reasons that we would affirm the order of the Commonwealth Court.

Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justices Donohue and Mundy join this opinion.