J-A07035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIZABETH JACOBS | : | |
| | : | |
| Appellant | : | No. 959 MDA 2025 |

Appeal from the Judgment of Sentence Entered May 30, 2025
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003029-2023

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:          **FILED: MAY 11, 2026**

Appellant, Elizabeth Jacobs, appeals from the judgment of sentence of 12 months' probation, imposed after a jury convicted her of resisting arrest (18 Pa.C.S. § 5104), failing to carry and exhibit a driver's license on demand (75 Pa.C.S. § 1511(a)), and failing to use a turning signal (75 Pa.C.S. § 3334(b)).  We affirm.

The trial court summarized the facts underlying Appellant's convictions, as follows:

> In the early morning hours of July 28[], 2023, [O]fficer William Wilk of the Wilkes-Barre City Police Department was in uniform and a marked patrol vehicle when he stopped at a red light at the intersection of Market Street and Wilkes-Barre Boulevard.  As he waited for the signal to change, … Appellant pulled her vehicle beside his and extended her hand out the open window and displayed her raised middle finger to the officer.  When the light turned green[,] … Appellant remained stopped at the light for a short period of time.  Not knowing whether … Appellant was merely exercising her right to communicate her dissatisfaction to police, having a mental health episode or signaling for help, Officer

Wilk waited for … Appellant's vehicle to resume traveling on the roadway, before he activated his dash camera and followed her as she resumed driving and approached a stop sign. … Appellant stopped at the stop sign. She did not activate her turn signal prior to coming to a complete stop. As she was stopped at the intersection, … Appellant activated her turn signal and made a right turn which prompted Officer Wilk to activate the emergency lights on his patrol vehicle to initiate a traffic stop. … Appellant somewhat haltingly came to a complete stop.

While … Appellant's vehicle was stopped, but prior to exiting his patrol vehicle, [O]fficer Wilk communicated with the 911 center to ascertain the vehicle registration and ownership information, and … learned that the vehicle was registered to a male. Officer Wilk approached the passenger side of … Appellant's vehicle and asked for her driver's license. She refused. Officer Wilk proceeded to ask … Appellant for her driver's license over a dozen times, and she continued to refuse that directive, replying "I'm not giving you shit."

Officer Wilk asked … Appellant to exit the vehicle. She again refused telling the patrolman, "Bye[,]" and further indicated to him that she intended to drive away [by] placing her hand on the ignition key. … Appellant continued to behave in an uncooperative, manner as Officer Wilk observed that [a] bag which was previously on the passenger seat was now positioned upon the center console closer to … Appellant. Concerned … Appellant might reach for a weapon in the bag, he moved from the passenger side of the vehicle to the rear of the vehicle before approaching the driver's side of … Appellant's vehicle where she was seated next to the now open door of her vehicle.

… Appellant continued to refuse to exit the vehicle. Officer Wilk held the door of … Appellant's vehicle [open] as she tried to close it[,] imperiling his arm. … Appellant, still inside her vehicle, kicked Officer Wilk in the stomach and attempted to punch him. This act is evident in the body camera evidence presented as Commonwealth's exhibit #1. She also continued to reach for the bag, now at hand on her center console, when Officer Wilk stepped away and aimed his taser at … Appellant[,] who continued to refuse to comply. Officer Wilk aimed his taser at … Appellant and[,] as she once again reached for her bag rather than comply, he deployed the electronic incapacitation device which stunned … Appellant. Officer Wilk, now being assisted by Officer [Matthew] Derenick, also of Wilkes-Barre Police Department, then forcefully

pulled … Appellant out of her vehicle and placed her on the ground to complete the arrest. As the police removed … Appellant from her vehicle, she continued to resist[,] resulting [in] her head impacting the vehicle's bumper. Fortunately, neither … Appellant nor Officer Wilk was seriously injured.

… Appellant was charged with resisting arrest, … obstructing the administration of a government function ["obstruction"], 18 Pa.C.S.[] § 5101, failure to carry a driver's license, … and improper turn signal…. Appellant's counsel filed a motion for a bill of particulars and a timely omnibus pre-trial motion on January 16, 2024. … Appellant's omnibus motion challenged the stop of … Appellant's vehicle, the lawfulness of her arrest, and [included] a motion for *habeas corpus*[,] which alleged that the Commonwealth failed to establish a *prima facie* case that … Appellant resisted arrest and obstructed the administration of a government function.

On June 4, 2024, [the court] conducted a hearing on … Appellant's pre-trial motions. At the conclusion of that hearing[, the court] denied … Appellant's motion to compel the Commonwealth to provide a bill of particulars and took the remaining outstanding matters raised in the omnibus motion under advisement. By Order dated December 31, 2024, [the court] denied … Appellant's pre-trial motions in their entirety and filed findings of fact and conclusions of law in support. Prior to trial, [the court] subsequently reconsidered that order and granted … Appellant's motion for *habeas* relief and dismissed the single count of obstructi[on]…. … Appellant then proceeded to trial before a Luzerne County jury on the single count of resisting arrest[,] and the summary offenses were presented to the trial court as factfinder.

Prior to trial, Appellant's counsel filed requests for jury instructions[,] which we granted in part and denied in part. Following their deliberations, the jury found … Appellant guilty of resisting arrest. [The court then found] … Appellant guilty of the summary offenses and scheduled a sentencing date. At her sentencing hearing, … Appellant apologized and testified that she learned from You[T]ube that she had the right to refuse to identify herself to law enforcement at a traffic stop. We sentenced … Appellant to modest fines in the sum of twenty-five dollars ($25.00) and to serve 12 months of probation.

Appellant's counsel filed post[-]sentence motions on June 5, 2025,

which we denied in their entirety by order dated July 1, 2025. On July 15, 2025, … Appellant filed a timely notice of appeal and by order dated July 16, 2025, we directed … Appellant to file her concise statement of matters complained of appeal pursuant to Pa.R.A.P. 1925(b)[] within 21 days. Thereafter, Appellant's counsel filed two concise statements. The first on July 25, 2025, presenting twelve (12) issues and the second, referred to as a supplemental concise statement on September 5, 2025, raising two (2) additional issues.

Trial Court Opinion ("TCO"), 11/10/25, at 1-6 (citations to the record and emphasis omitted; some formatting altered). The trial court filed its Rule 1925(a) opinion on November 10, 2025.

Herein, Appellant states the following issues for our review:

A. Did the trial [court] commit a prejudicial error of law when [it] denied [Appellant's] motion for acquittal, which motion challenged the sufficiency of the evidence to convict [Appellant] of the first premise of resisting arrest because the Commonwealth failed to establish a "lawful arrest" under 18 Pa.C.S.[] [§] 5104?

B. Did the court commit a prejudicial error of law when it denied [Appellant's] omnibus motion and her motion for acquittal on the basis that the Commonwealth failed to establish sufficient evidence to convict [Appellant] on the second premise of 18 Pa.C.S.[] [§] 5104, "preventing a public servant from discharging any other duty?" The jury's finding of guilt is in direct conflict with the reasoning and holding of the Superior Court's decision in **Com[monwealth] v. Karl**, … 476 A.2d 908 ([Pa. Super.] 1984).

C. Did the trial [court] commit prejudicial error of law where, after twice ordering the Commonwealth to answer [Appellant's] Bill of Particulars seeking the identity of the charge [Appellant] was allegedly arrested for, as well as the "public duty" she allegedly prevented the public servant from performing, the trial [court] denied [Appellant's] motion for contempt where the Commonwealth failed to respond to [Appellant's] request?

D. Did the trial [court] commit a prejudicial error of law where [it] refused [the] defense's request to provide separate verdict sheets separating the resisting arrest charge into two separate premises,

- 4 -

"resisting a lawful arrest," and/or "preventing a public servant from discharging any other duty?"

E. Did the trial court commit a prejudicial error of law when it failed to instruct the jury as requested in [Appellant's] point for charge [number] 9?

F. and G. Did the trial [court] commit prejudicial error when [it] failed to instruct the jury in accordance with [Appellant's] requested instruction [number] 10 on how and who should determine when an arrest occurred, as well as [Appellant's instruction number] 11, which would have informed the jury of the charge for which [Appellant] was arrested?

H. Did the trial court err in failing to instruct the jury that the determination of whether the arrest of [Appellant] was lawful was the function for the jury which must make that determination by the standard of proof beyond a reasonable doubt[?]

I. Did the trial [court] commit prejudicial error of law when [it] ruled that 75 Pa.C.S.[] [§] 3334 requires a driver who stops at a stop sign and engages their turn signal to also engage their turn signal either 100 feet before stopping or 300 feet before stopping?

Appellant's Brief at 4-5 (unnecessary capitalization omitted).

## **Issues 1 & 2: Sufficiency of the Evidence**

Appellant's first two issues address the sufficiency of the evidence to sustain her conviction for resisting arrest and will be addressed together. Initially,

[w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of

- 5 -

innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

The offense of resisting arrest is defined as follows:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. Therefore, to sustain a conviction for resisting arrest, the evidence must prove "a public servant was effecting a lawful arrest **or** discharging a legal duty 'other than arrest,' which the defendant intended to prevent." *Commonwealth v. Cahill*, 324 A.3d 516, 528 (Pa. Super. 2024) (citing *Karl*, 476 A.2d at 911) (emphasis added).

In this case, Appellant argues the Commonwealth failed to prove Officer Wilk was attempting to effectuate a lawful arrest, or that the officer was discharging a legal duty. We first address whether the evidence was sufficient to prove Appellant intended to prevent Officer Wilk from effectuating a lawful arrest. In this regard, the court explained:

Once … Appellant attempted to strike [Officer Wilk] as evidenced by the body camera video, Officer Wilk had probable cause to

arrest … Appellant for simple assault, 18 Pa.C.S.[] § 2701(a)(1). When … Appellant continued to refuse to exit the vehicle and submit to arrest[,] Officer Wilk deployed his taser to incapacitate … Appellant and take her into custody[,] and she once again employed means justifying or requiring substantial force to overcome the resistance. 18 Pa.C.S.[] § 5104. She continued resisting and ultimately[,] as she and police struggled and as she was taken to the ground[,] she struck her head on the vehicle. … Appellant's conduct is exactly the type of conduct that [s]ection 5104 of the Crimes Code proscribes.

TCO at 16-17 (citation to the record omitted).

Appellant argues the court erroneously "concluded you do not need a 'lawful arrest[,]' but that probable cause, **even without an arrest**, would suffice." Appellant's Brief at 20-21 (emphasis added). We are confused by Appellant's suggestion there was no arrest, as the evidence clearly demonstrated Appellant kicked and punched at Officer Wilk, after which he arrested her for simple assault. For instance, Officer Wilk testified unequivocally, and repeatedly, that Appellant kicked him and attempted to punch him. **See** N.T. Trial, 3/25/25-3/27/25, at 56 (Officer Wilk's testifying Appellant "began to kick" him, hitting him "in the lower stomach[,] … [a]nd … attempted to punch [him] in the face"); **id.** at 59 (Officer Wilk's stating Appellant "kicked [him] and attempted to punch [him] in the face"); **id.** at 70 (Officer Wilk's explaining Appellant "began to kick [him] in the stomach and punch [him] in the face" as he attempted to remove her from her vehicle). Officer Wilk's body camera footage corroborated his testimony. **See id.** at 70 (Officer Wilk's explaining the body camera footage, which showed Appellant's

kicking him and attempting to punch him in the face).  Moreover, Appellant herself admitted she "did kick at" the officer.  *Id.* at 197.

Moreover, Officer Wilk clearly, and repeatedly, testified he was attempting to arrest Appellant for assault when she resisted.  In fact, most of his testimony in this regard came during cross-examination, when Appellant's counsel continually questioned the officer about whether, and for what offense, Appellant was being arrested, and the officer consistently answered she was being arrested for simple assault.  *See id.* at 111 (defense counsel's asking, "The arrest was [for] the simple assault?" to which Officer Wilk replied, "Simple.  Yes."); *id.* at 112 (defense counsel's asking, "[A]re you aware that in order for the first part [of the resisting arrest offense] to apply, the arrest must be lawful?" to which Officer Wilk stated, "The arrest was lawful for the assault.  Yes."); *id.* at 113-14 (defense counsel's asking, "Did you check with anyone at the District Attorney's Office to determine if you can charge someone with resisting arrest for an arrest that never occurred?" to which the officer replied, "I'm confused by that question because the arrest did occur for an assault."); *id.* at 117 (defense counsel's asking Officer Wilk, "[W]hen did you first arrest her[,]" to which he replied, "After the assault."); *id.* at 118 (defense counsel's asking, "And the resisting arrest for the assault involved an assault for which she was never arrested…; right?" to which Officer Wilk replied, "She was arrested for the assault."); *id.* at 119 (defense counsel's asking, "[H]ow can [the assault] serve as the basis for the resisting [arrest] if she's never charged with an assault and there was never any arrest for

assault[?]" to which the officer answered, "She was arrested for assault. I chose not to charge her with assault."). Indeed, defense counsel questioned the officer so incessantly on the issue of whether Appellant was arrested, and for what offense, that the Commonwealth finally objected, stating, "I feel like this question's just being recycled over and over." *Id.* at 119. The court agreed the question had "been asked and answered" and sustained the Commonwealth's objection. *Id.* at 120.

This record demonstrates Officer Wilk was arresting Appellant for simple assault when she resisted. The evidence was also sufficient to prove the officer's arrest of Appellant for simple assault was lawful. It is well-settled that a warrantless arrest is lawful when it is supported by probable cause. *See In Interest of O.A.*, 717 A.2d 490, 495 (Pa. 1998) ("In order to be constitutionally valid under the Fourth Amendment to the United States Constitution, a warrantless arrest must be supported by probable cause.") (citation omitted). Here, Officer Wilk testified Appellant kicked him "[t]wo to three" times, with "[a]t least one" of her kicks making contact with his "lower stomach[,] upper groin area." N.T. Trial at 70. Appellant also "attempted to punch [the officer] in the face." *Id.* These acts were sufficient to provide the officer with probable cause that Appellant committed simple assault. *See* 18 Pa.C.S. § 2701(a)(1) (stating a person is guilty of simple assault if he/she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another"); 18 Pa.C.S. § 2301 (defining "bodily injury" as "[i]mpairment of physical condition or substantial pain").

Notably, Appellant does not explicitly challenge whether the officer possessed probable cause. Instead, she seems to aver that because Officer Wilk did not verbally announce she was under arrest, or subsequently charge her with simple assault, she could not be convicted of resisting arrest. *See* Appellant's Brief at 24. Both claims are meritless.

First, Appellant concedes an arrest "is a physical action restraining the defendant's freedom and/or is spoken words to the defendant clearly telling him/her their freedom of movement is being restricted." *Id. See also Stansbury v. California*, 511 U.S. 318, 322 (1994) ("In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.") (internal quotation marks omitted); *Commonwealth v. Pakacki*, 901 A.2d 983, 987-88 (Pa. 2006) ("A person is in custody … only when he is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.") (cleaned up). Instantly, Officer Wilk testified that after Appellant assaulted him, he "stepped back and displayed [his] taser. And [he] told her to step out of the vehicle again." N.T. Trial at 59. He explained he asked Appellant "nine times." *Id.* at 61. When Appellant refused to exit and "reached for the bag" inside her car once again, the officer "deployed the taser." *Id.* at 59. The officer's testimony that he ordered Appellant to step out of the vehicle,

threatened to tase her if she refused, and then employed the taser when she did not comply, were sufficient words and actions conveying to Appellant that her freedom of movement was being restricted in such a significant way that she was in custody. Accordingly, Appellant's acts of resisting Officer Wilk's efforts to effectuate her arrest were sufficient to support her conviction for resisting arrest.[1, 2]

Second, to the extent Appellant challenges her conviction for resisting arrest because Officer Wilk did not charge Appellant with simple assault, this argument is meritless. Officer Wilk testified that, although he arrested Appellant for assault, he simply "chose not to charge her with it." **Id.** at 116; **see also id.** at 119 (Officer Wilk's stating, "She was arrested for assault. I chose not to charge here with the assault."). The officer's decision not to charge Appellant with simple assault did not erase the fact he **arrested** her for that crime or eliminate the probable cause he had to do so, which we discuss *infra*. As this Court has explained:

> Once probable cause is established, it does not dissipate simply because the suspect is not charged with the particular crime which led to the finding of probable cause. There are many reasons why

---

[1] Appellant raises no challenge to the sufficiency of the evidence to prove she "create[d] a substantial risk of bodily injury to the public servant or anyone else, or employ[ed] means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. Thus, she has waived any challenge to these elements of her resisting arrest conviction.

[2] Given our conclusion the evidence was sufficient to prove Officer Wilk was lawfully arresting Appellant, we need not address her second issue arguing the evidence was inadequate to prove she acted with the intent to prevent the officer from discharging any other duty.

- 11 -

the officer may not have filed the formal charge: upon reflection, he may have determined that there was insufficient evidence to warrant a conviction; he may have determined that society's interests were better served by exercising mercy; he may … have filed more serious charges and simply dispensed with the summary offense. None of these scenarios affects the finding of probable cause, however, once it has been established because probable cause is based on the facts and circumstances *known at the moment of the arrest,* and not on what may or may not occur after the arrest.

***Commonwealth v. Canning***, 587 A.2d 330, 332 (Pa. Super. 1991) (emphasis in original). Accordingly, no relief is due on this argument. In sum, the evidence was sufficient to prove Officer Wilk was arresting Appellant for simple assault when Appellant resisted, and that arrest was lawful as it was supported by probable cause.

### Issue 3: Bill of Particulars

In Appellant's third issue, she contends the court "committed [a] prejudicial error of law" when it denied her motion for contempt after the Commonwealth failed to adequately respond to the court's order to answer Appellant's bill of particulars. Appellant's Brief at 40 (emphasis omitted). Therein, Appellant sought "the identity of the criminal charge … [Appellant] allegedly prevented [Officer Wilk] from effecting, and … the identity of the 'duty' the Commonwealth alleg[ed Appellant] prevented the [officer] from discharging." ***Id.*** In response to the court's order for the Commonwealth to respond to Appellant's bill of particulars, the Commonwealth stated Appellant's request was "tantamount to a request for a disclosure of legal research and/or theories and/or conclusions of the attorney for the

Commonwealth, which constitutes protected work product under Pa.R.Crim.P. 573(G)." *Id.* at 41. The Commonwealth further averred, "The discovery provided and available evidence in [Appellant's] possession, including but not necessarily limited to, the criminal information, already … with requisite specificity[,] advises [Appellant] as to the nature of the charges against her." *Id.*

On June 4, 2024, the trial court conducted a hearing on Appellant's pretrial motions, which included a motion to suppress, motions relating to "discovery issues[,]" and Appellant's "motion for sanctions against the Commonwealth" for failing to "provide[] the information requested" in response to her motion for a bill of particulars. N.T. Hearing, 6/4/24, at 4. At the close of that hearing, the court denied Appellant's motion for sanctions and/or to hold the Commonwealth in contempt, finding "the defense [was] clearly on notice of what [the Commonwealth's] allegations [were]" and it had "been testified and argued to *ad nauseum*" at the hearing. *Id.* at 78.

Appellant now argues the court erred by denying her motion to sanction or hold the Commonwealth in contempt. She explains she "requested the Commonwealth address two essential issues regarding the [criminal] information" in her request for a bill of particulars: "namely[,] the charge [Appellant] allegedly resisted, and the identity of the duty she allegedly prevented." Appellant's Brief at 43. Appellant insists sanctions or holding the Commonwealth in contempt was warranted, where the Commonwealth refused to provide information on either of these issues, never identifying "the

charge [Appellant] allegedly resisted," or offering "any concrete statement as to the 'duty' [Appellant] prevented Officer Wilk from discharging." *Id.* at 43, 44.

Initially, Appellant cites no legal authority to support her claim the court should have imposed sanctions, or held the Commonwealth in contempt, for failing to adequately respond to her request for a bill of particulars. Pennsylvania Rule of Criminal Procedure 572 states:

> (A) A request for a bill of particulars shall be served in writing by the defendant upon the attorney for the Commonwealth within 7 days following arraignment. The request shall promptly be filed and served as provided in Rule 576.
>
> (B) The request shall set forth the specific particulars sought by the defendant, and the reasons why the particulars are requested.
>
> (C) Upon failure or refusal of the attorney for the Commonwealth to furnish a bill of particulars after service of a request, the defendant may make written motion for relief to the court within 7 days after such failure or refusal. If further particulars are desired after an original bill of particulars has been furnished, a motion therefor may be made to the court within 5 days after the original bill is furnished.
>
> (D) When a motion for relief is made, the court may make such order as it deems necessary in the interests of justice.

Pa.R.Crim.P. 572. Additionally, our Supreme Court has explained:

> A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations. It is not a substitute for discovery and the Commonwealth's evidence is not a proper subject to which a bill of particulars may be directed.

*Commonwealth v. Champney*, 832 A.2d 403, 412–13 (Pa. 2003) (cleaned up).

Here, the court denied Appellant's motion to sanction or hold the Commonwealth in contempt because it concluded she had adequate notice of the Commonwealth's allegations. We discern no abuse of discretion in that decision. *See Commonwealth v. McKnight*, 305 A.3d 582, 589 (Pa. Super. 2023) ("We review a trial court's [Pa.R.Crim.P.] 572 [(governing a request for a bill of particulars)] decision for an abuse of discretion." (quotation marks omitted) (quoting *Commonwealth v. Libengood*, 152 A.3d 1057, 1059 (Pa. Super. 2016) (citation omitted)). During Officer Wilk's testimony at the hearing on Appellant's motion, he explained Appellant "was arrested … when she assaulted [him]." N.T. Hearing at 36. Later, defense counsel asked, "[W]hat was [Appellant] being arrested for besides those charges, the resisting arrest, what arrest was she resisting?" to which the officer replied, "The assault." *Id.* at 37. After defense counsel further insisted he "want[ed] to know what arrest she was resisting[,]" Officer Wilk responded, "Like I stated, after the initial assault is when I decided to place her under arrest. She also obstructed the … performance of my duties." *Id.* at 38. Later, the officer elaborated Appellant was obstructing the performance of his duties by "refus[ing] to give [him] her identification after multiple requests[,]" and "refus[ing] to exit the vehicle after numerous requests." *Id.* at 42. We agree with the trial court the officer's testimony sufficiently notified Appellant the Commonwealth was alleging she prevented Officer Wilk from effecting a lawful arrest for assault, and/or impeded his efforts to discharge his duties of

obtaining her identification and removing her from her vehicle during the traffic stop.  Accordingly, no relief is due on Appellant's third issue.

### Issue 4: Separating Verdict Sheet

Next, Appellant claims the court erred by refusing her request to separate the offense of "resisting arrest … into the two separate premises, 'resisting a lawful arrest' and/or 'preventing a public servant from discharging any other duty'" on the verdict sheet given to the jury.  Appellant's Brief at 45.  Appellant argues it was unclear which premise applied to her conduct and, thus, the court should have required the jury to indicate under which premise it found her guilty.  Because the court denied her request to separate the offense on the verdict sheet, she insists the jury's verdict is ambiguous and we must award her a new trial.

Initially, we disagree with the Commonwealth's claim Appellant waived this issue for our review.  At trial, defense counsel requested the verdict sheet be split "into the two different parts."  N.T. Trial at 294.  The Commonwealth objected, and after a brief discussion, the court stated, "I note the request, but I'm [going to] deny it."  **Id.** at 294-95.  Although defense counsel did not thereafter make a formal objection to the court's ruling, she clearly raised this issue before the trial court.  Thus, we conclude it was preserved for our review.

Nevertheless, we discern no abuse of discretion or error of law by the trial court.  As the court observed, "We do not know precisely by which theory of liability the jury convicted … Appellant, but … Appellant is not prejudiced by this uncertainty."  TCO at 20.  The court reasoned, "No matter which theory

of liability the jury based their judgment[,] … the grading of the misdemeanor two offense is the same and[,] accordingly[,] … Appellant cannot demonstrate … she was prejudiced by [the court's] refusal to limit the Commonwealth to any one theory of liability." **Id.** at 21. We agree. We have concluded the evidence was sufficient to convict Appellant under the 'lawful arrest' provision of the resisting arrest statute. Because that provision is not graded differently than the 'discharging duty' provision, Appellant was not prejudiced by not knowing under which theory the jury convicted her. **See Commonwealth v. Cox**, 983 A.2d 666, 691 (Pa. 2009) (holding that a defendant's due process rights are not violated by the Commonwealth's presentation of alternate theories of liability); **see also Apprendi v. New Jersey**, 530 U.S. 466 (2000) (holding that any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt).

## Issues 5, 6, & 7: Jury Instructions

Appellant's next three issues challenge the jury instructions provided by the court. Initially, we note:

> Our standard of review in regard to a trial court's decisions on jury instructions is well-settled: "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Galvin**, … 985 A.2d 783, 788-89 ([Pa.] 2009). "[Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." **Commonwealth v. Hamilton**, 766 A.2d 874, 878 (Pa. Super. 2001).

- 17 -

*Commonwealth v. Cannavo*, 199 A.3d 1282, 1286 (Pa. Super. 2018).

Additionally, "[t]the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal." *Commonwealth v. Green*, 273 A.3d 1080, 1084 (Pa. Super. 2022) (citations omitted).

In this case, Appellant argues the court erred by failing to provide certain jury charges she requested. Specifically, Appellant asked the court to instruct the jury it must conclude she was lawfully arrested, *see* Defendant's Points for Charge, 3/24/25, at 8; a lawful arrest requires probable cause, and provide the definition thereof, *id.* at 8-9; it was the jury's function to determine if Appellant was being lawfully arrested for a crime other than resisting arrest or obstruction,[3] *id.* at 12; an arrest occurs when an officer "indicates his intention to detain or take a person into custody, thereby subjecting that person to the actual control and will of the officer" and "[n]o declaration of arrest is required," *id.* at 13; and "the jury has a right to know the reason for which [Appellant was] being arrested[,]" *id.* at 14.

---

[3] As set forth *supra*, Appellant was charged with obstruction, 18 Pa.C.S. § 5101, which is a misdemeanor of the second degree. That charge was ultimately dismissed prior to trial. It is unclear why Appellant believes her instant conviction could not be premised on her resisting a lawful arrest for obstruction, as she provides no discussion of this offense in her appellate brief. In any event, we need not delve into this claim, as we concluded, for the reasons set forth *supra*, that Officer Wilk was lawfully arresting Appellant for simple assault.

Preliminarily, the Commonwealth contends Appellant waived her challenge to the trial court's refusal to provide her specific points for charge because she did not object after the court concluded its jury instruction. **See** Commonwealth's Brief at 23; **see also** Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."); Pa.R.A.P. 302(b) ("Specific exception [must] be taken to the language or omission [in the charge] complained of."); **Commonwealth v. Lake**, 281 A.3d 341, 347-48 (Pa. Super. 2022) ("In order to preserve a claim that a jury charge was erroneously given, the [a]ppellant must have objected to the charge at trial.") (quoting **Commonwealth v. Parker**, 104 A.3d 17, 29 (Pa. Super. 2014)).

We disagree. In **Commonwealth v. Pressley**, 887 A.2d 220 (Pa. 2005), our Supreme Court held

> that under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

**Id.** at 225. However, this Court has concluded that decisions by our Supreme Court after **Pressley** indicate "a jury instruction issue can be preserved not only at the conclusion of a jury charge but also during a charging conference." **Commonwealth v. Green**, 273 A.3d 1080, 1084 n.2 (Pa. Super. 2022). For instance,

In ***Commonwealth v. Sanchez***, … 82 A.3d 943 ([Pa.] 2013), decided eight years after ***Pressley***, the appellant raised a jury instruction issue. The Commonwealth argued the issue was waived "because the record does not indicate that any request for a voluntary manslaughter instruction was made, or that a specific and timely objection was made to the court's denial of such instruction." ***Sanchez***, 82 A.3d at 978. The Court noted that the "Commonwealth's suggestion of waiver with respect to this claim of error is clouded by the fact that the charging conference between the court and counsel was not transcribed." ***Id.*** However, the trial court disposed of the jury instruction issue in its supplemental Rule 1925(a) opinion. The Supreme Court interpreted the trial court's disposition of the issue as evidence "that the issue had been properly preserved during the conference." ***Sanchez***, 82 A.3d at 978-79. ***See also Commonwealth v. Sandusky***, 77 A.3d 663 (Pa. Super. 2013).

***Id.***

Instantly, before the court provided its jury instruction, defense counsel stated, "Your Honor, … ***in order to preserve our objections to the failure to rea[d] certain points for charge***, I'd go through each one that we object to." N.T. Trial at 236 (emphasis added). Counsel then lodged specific objections to the court's failure to provide each point for charge she now challenges on appeal. ***See id.*** at 237-38. Afterwards, the court stated all counsel's objections were "noted for the record." ***Id.*** at 239. In the court's Rule 1925(a) opinion, it noted it "denied several of … Appellant's requests and charged the jury using the suggested jury instructions ***over defense counsel's objection***." TCO at 19 (emphasis added). The court did not deem Appellant's challenges to its instructions waived, and addressed the merits of her issues. ***Id.*** 19-20. Based on this record, we do not agree with the Commonwealth that Appellant waived her jury instruction issues.

- 20 -

Nevertheless, we conclude Appellant has not demonstrated she was prejudiced by the court's failure to provide her requested jury instructions. The court charged the jury, in pertinent part, as follows:

> [THE COURT:] As you've heard, [Appellant] has been charged with resisting arrest and/or law enforcement. To find [Appellant] guilty of this offense, you must find each of the following two elements has been proven beyond a reasonable doubt. First, that [Appellant] created a substantial risk of bodily injury regardless of whether any actual injury occurred to a police officer and/or resisted by means justifying or requiring substantial force to overcome the resistance.
>
> And second, that [Appellant] did so with the intent of preventing the police officer from effecting a lawful arrest and/or discharging a duty. A person cannot commit this crime unless he or she creates a substantial risk of bodily injury and/or resists by means justifying or requiring substantial force to overcome his or her resistance. Thus[,] you cannot find [Appellant] guilty if you find that she merely tried to run away from, scuffled with, and/or argued with the officer.

N.T. Trial at 290-91.

Appellant does not contend this charge misstated the law. Rather, she avers — in a lengthy and extremely confusing argument — that more specific instructions were warranted because it was unclear whether Appellant was arrested at all, or that her arrest was for an offense other than resisting arrest. *See* Appellant's Brief at 53. In this regard, Appellant maintains her case is similar to ***Commonwealth v. Alford***, 467 A.2d 1351 (Pa. Super. 1983). There, the appellant was convicted of resisting arrest based on evidence that, during a neighborhood altercation, a police officer

> approached [the] appellant and repeatedly told him to stop yelling obscenities at the arresting officers and keep clear of the trouble area. He then testified that when [the] appellant ignored these

commands, he told appellant he was under arrest. Finally, [the o]fficer … testified that when he approached [the] appellant to take him into custody, [the] appellant flailed his arms and legs in resistance and was only subdued after several other officers came to his assistance. [The a]ppellant, on the other hand, testified that neither [that o]fficer … nor any other officer ever said or otherwise indicated that he was under arrest, and that the officers had brutally and unnecessarily beat him.

*Id.* at 1352.

On appeal, the appellant in *Alford* claimed the court had erred by instructing the jury "that the police officers were making or attempting to make a lawful arrest." *Id.* In agreeing, we explained:

> [The Commonwealth] cites the cases of *Commonwealth v. Stortecky*, … 352 A.2d 491 ([Pa. Super.] 1975), and *Commonwealth v. Franklin*, … 374 A.2d 1360 ([Pa. Super.] 1977), in support of the position that the lawful arrest requirement of the crime of resisting arrest is a question of law for the court to decide. However, these cases involve the question whether an arrest, which concededly occurred, was lawful. In the instant case, [the] appellant's testimony was that an arrest, lawful or not, had never occurred, since there had been no act indicating [the o]fficer['s] intention to take [the] appellant into custody. While the *lawfulness* of an arrest is a question of law for the court, … *Stortecky*, *supra*, where, as here, there is conflicting testimony concerning the very *existence* of an arrest, a question of fact for the jury has been raised. We, therefore, conclude that the lower court erred in instructing the jury that the officers were in fact making or attempting a lawful arrest and should have submitted the factual dispute, as to whether [the o]fficer … had indicated to [the] appellant that he was under arrest, to the jury.

*Id.* (some internal citations and footnotes omitted; emphasis in original).

Instantly, unlike in *Alford*, the trial court did not instruct the jury that Appellant had been lawfully arrested. *See* N.T. Trial at 290-91. Moreover, although Appellant contends, without any citation to the record, that "it is undisputed there was no arrest" for any crime other than resisting arrest,

Officer Wilk's testimony clearly belies this assertion. Appellant's Brief at 62. Namely, as thoroughly discussed above, during Appellant's cross-examination of the officer, he repeatedly testified Appellant was being arrested for assault based on her kicking and punching him. Accordingly, **Alford** is distinguishable from the instant case.

In sum, we discern no error or abuse of discretion in the court's decision to reject Appellant's specific points for charge. Appellant asked the court to inform the jurors it was their obligation to determine if she was arrested, which the court **did** so instruct them. **See** N.T. Trial at 290-91. Appellant's other points for charge essentially asked the court to charge the jury that it must determine the **lawfulness** of her arrest, and instruct them how to make that determination. **See** Defendant's Points for Charge at 8-14. However, the lawfulness of an arrest is a question of law for the court, **Stortecky**, **supra**, and we have determined Appellant's arrest was lawful.[4] Accordingly, Appellant's jury instruction issues are meritless.

_____

[4] Appellant contends she asked the trial court to "overrule … **Stortecky**" and instruct the jury it was their obligation to determine the lawfulness of her arrest. Appellant's Brief at 57. Because the trial court did not have the power to overrule **Stortecky**, it did not abuse its discretion in rejecting Appellant's requested instruction. Additionally, to the extent Appellant claims there is a case pending before our Supreme Court "dealing with this very issue[,]" we are unconvinced. **Id.** Appellant points to **Commonwealth v. Steadly**, 328 A.3d 1 (Pa. 2024), where our Supreme Court granted allowance of appeal on the following issue: "Where the sole basis for an arrest is a warrant, is the evidence insufficient to establish resisting arrest when the Commonwealth failed to produce evidence of the warrant's validity?" **Id.** Appellant does not

*(Footnote Continued Next Page)*

## Issue 8: Legality of Vehicle Stop

In Appellant's last issue, she contends the court "committed prejudicial error when it ruled that 75 Pa.C.S.[ §] 3334 requires a driver who stops at a stop sign and engages their turn signal to also engage their turn signal either 100 feet before stopping or 300 feet before stopping." Appellant's Brief at 65. Appellant's lengthy, 10-page argument on this issue is confusing. However, it appears she is claiming the trial court erred in denying her pretrial motion to suppress because Officer Wilk's stopping her for violating section 3334 was illegal, as it was premised on the officer's incorrect belief she was required to activate her turn signal 100 feet before the stop sign. *See id.*; Appellant's Brief in Support of Omnibus Motion, 6/11/24, at 2 (stating one of her pretrial issues as follows: "Did Officer Wilk have probable cause to stop [Appellant] for violating 75 Pa.C.S.[ §] 3334 where she did not engage her turn signal 100 feet before a stop sign, but where [Appellant] stopped at the stop sign and engaged her turn signal and fully complied with the stop sign requirements contained in 75 Pa.C.S.[ §] 3323?").

Initially, we observe:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those

---

explain how her instant jury-instruction issue relates to *Stortecky's* holding that the lawfulness of an arrest is a question for the court. She also does not elaborate on how *Steadly* might apply under the facts of this case, which clearly did not involve an arrest warrant. Thus, no relief is due.

facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (cleaned up).

Here, Appellant seemingly contends Officer Wilk's stopping her vehicle based on a violation of section 3334 was illegal. That statute states, in pertinent part:

> **(b) Signals on turning and starting.--**At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S. § 3334(b).

According to Appellant, the statute "does not require a driver who stops at a stop sign and engages their turn signal to also have engaged their turn signal 100 … feet before stopping." Appellant's Brief at 17. She contends "[t]he only situation dealing with a non-moving vehicle requires that a signal be given '…prior to entry of the vehicle into the traffic stream from a parked position.'" *Id.* at 67 (quoting 75 Pa.C.S. § 3334(b)). Thus, she argues she

- 25 -

did not violate section 3334(b) by failing to signal prior to stopping at the stop sign.

We disagree. To begin, we recognize:

In construing a statute, we seek to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The primary indicator of the legislature's intent is the statute's plain language. To interpret the meaning of words that the statute does not explicitly define, we turn to an examination of dictionary definitions. If the plain language is clear and unambiguous, that unambiguous interpretation controls.

**Commonwealth v. Strunk**, 325 A.3d 530, 534 (Pa. 2024) (cleaned up).

Instantly, the Commonwealth maintains "there is nothing ambiguous about [section 3334(b)]. It plainly, and in fairly simple language, requires a driver, who is travelling less than 35 miles an hour[,] to signal a turn 'during not less than the last 100 feet traveled by the vehicle before turning.'" Commonwealth's Brief at 25. We agree.

We deem meritless Appellant's argument she was "parked" at the stop sign, and therefore only required, under the last sentence of section 3334(b), to signal when she moved from that position into the stream of traffic. Although the Vehicle Code does not explicitly define "parked," its definitions of "park" or "parking" do not encompass a vehicle's being stopped at a stop sign. **See** 75 Pa.C.S. § 102 (defining "[p]ark" or "parking" as follows: "(1) When permitted, means the temporary storing of a vehicle, whether occupied or not, off the roadway. (2) When prohibited, means the halting of a vehicle, whether occupied or not, except momentarily for the purpose of and while actually engaged in loading or unloading property or passengers.") (emphasis

omitted). In any event, the last sentence of section 3334(b) states: "The signal shall **also** be given prior to entry of the vehicle into the traffic stream from a parked position." 75 Pa.C.S. § 3334(b) (emphasis added). The word "also" is commonly understood to mean, "in addition." **See** *Also*, Merriam-Webster, https://www.merriam-webster.com/dictionary/also (last visited Apr. 17, 2026). Accordingly, even if Appellant was "parked" at the stop sign, the statute would indicate she was required to signal **both** 100 feet before reaching the stop sign from which she was making a turn, **and** before turning into the stream of traffic from her ostensibly parked position.

The testimony at the suppression hearing demonstrates Appellant failed to meet this requirement. Namely, Officer Wilk testified Appellant did not activate her turn signal 100 feet before turning at the stop sign; instead, she activated it when she stopped at the stop sign. N.T. Hearing at 6. The officer's testimony was corroborated by the video from his dashboard camera. **See** *id.* at 22.[5] Accordingly, Officer Wilk had probable cause to stop Appellant's vehicle for a violation of section 3334(b). **See Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa. Super. 2013) ("Where a vehicle stop has no investigatory purpose, the police officer must have probable cause to support it.") (citing **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en*

---

[5] Appellant does not dispute she was approaching the stop sign at less than 35 miles per hour. However, Officer Wilk also confirmed, at the suppression hearing, he was "traveling approximately the same speed [as Appellant] leading up" to the stop sign, and his vehicle was going under 35 miles per hour. N.T. Hearing at 7.

*banc*)) (footnote omitted).  The court did not err in denying Appellant's omnibus motion challenging the legality of the stop.

Judgment of sentence affirmed.


Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/11/2026